May I please the court, Saad Ahmed for the petitioner. The petitioner in this case, your honors, seeks a review of the BIA's final order of removal, denying her applications for asylum, withholding of removal, and relief under the Convention Against Torture on the ground that petitioner was not a credible witness and petitioner failed to meet her burden of proof. In this case, the BIA adopted the decision of the IJ, which cannot be upheld for two main reasons. First of all, the immigration judge made legal errors in his findings. And number two, the immigration judge's adverse credibility determination is not based on specific and cogent reasons as required by this court. The immigration judge, judge's reason for finding the petitioner not credible was based on, was based on factors that cannot be upheld in this court of appeals. The immigration judge's alleged inconsistencies either did not exist, or they were minor and did not go to the heart of the claim, or the immigration judge did not take into account the petitioner's reasonable explanations for those inconsistencies. The primary inconsistency in this case that became the basis for the judge's adverse credibility determination was the fact that petitioner filed two separate asylum applications, one in 1996 and the second one in 2004. The immigration judge, however, did not take into account the petitioner's explanation that she was defrauded. She did not file – she did not know the contents of the first asylum application. And – Kennedy. Pardon me, counsel. Wasn't she specifically asked at the immigration hearing whether she had read her initial application, and did she not say that she had, and she ratified it? Your Honor, the record does not support that. The record does not say that the petitioner knew the contents of her asylum applications. The petitioner's – I didn't say that she knew. I said that the record showed that she was asked, have you read it, and do you ratify its contents? Yes, Your Honor. She was asked that question. She was asked that, right? Yes. Now, she says, well, but I didn't know what I was in the application. Is that what she's saying? That's correct. She was not aware, because at the time she filled out the – Did she say that when she was asked if she had read the application and ratified its contents, did she say, yes, but I didn't know what was in it? Yes. That's what she said. Yes, Your Honor, that's what she – Do you have a citation for that? Yes, Your Honor. I believe I can – it's an administrative record. It's – it's administrative record, page 396. Your Honor, I believe in this – on this page, she is asked by the judge, and she says, no, I know, Your Honor, but I don't believe this is the – this application is – Line what? I have 396 here. Yes. Oh, I'm sorry, Your Honor. I gave you the wrong page. I thought – Yes. It is page number 401. 401. Here, the judge – on the third line, the judge asked her, well, now, let me ask to get an understanding of this thing. Who is the person accompanying you? He said he's a neighbor. Was he somebody that you knew? And she said, it's a neighbor. Once he knew my condition, but I was going through, he said, why don't you apply for asylum for you? Things happen. I can read that. Yes. Did he go to the asylum application? And then it says – and then he says he may have been a crook, but you brought him there. This is the explanation she gave. Yes. But at the beginning, she said that she had read – she had read the application and it was accurate. Huh? Later on, she came up with this explanation. Yes. All right. Your Honor, she said that, but I think she didn't understand the question the I.J. asked her. And that's what happened here. She didn't understand the question that the immigration judge asked her? That's correct. Did she say that she didn't understand the question that the immigration judge asked her? Your Honor, I think that when the immigration judge asked her about the contents of her asylum application, she meant the amended asylum application, not the first asylum application. She claimed that she did not know anything about it. She did not speak English, so she did not know what was in that asylum application. Because she did not know what was in the asylum application, she did not make a frivolous asylum application. Under this Court's jurisprudence, an immigration judge must take into account an alien's reasonable – I'm looking at 401, 3 through 12. And the question is, now let me get an understanding of this thing. I'm going to ask you to tell me who was the person accompanying you. He was a neighbor. Was he somebody that you knew? It's a neighbor who, once he knew my condition, what I was going through, he said, why don't we apply for an asylum for you? Things happen. It can go through. And he did really fool me, and he got quite a bit of money from me, too. Is that what you're relying on, to say that she didn't understand what was in the application? Yes, Your Honor. All right. Thank you. The IJ pointed out some other significant problems regarding her credibility. Yes, Your Honor. She came to the United States, went back to Gaza. Yes, she did that. Went to the United Arab Emirates. Yes. She came back to the United States, was here for a while. Went back after she filed her asylum application. Yes. However, the immigration judge ---- I mean, those are pretty ---- I mean, our case law reflects that when you go back, you know, there's some question about whether or not you really ---- Yes. Your Honor ---- Your representations in your application can be believed. Right. That's a good question. However, in this case, the judge did not take that factor into account in making her adverse credibility determination. If you look at the judge's decision, that was not one of the basis. She talked about the fact that the petitioner left the country, but she did not use that to justify her credibility determination. And I would also like to point out that the government in their answering brief cited the case Loho v. Holder. In that case, the court found that a person's credibility was undermined because she voluntarily traveled to Indonesia, a country that she claimed that she was afraid to go to. But in that case, it was an ethnic Chinese woman from Indonesia. In this case, the petitioner did not fear returning to Gaza Strip because of her race or ethnicity. She feared because she feared that her expression or her way of life was offensive to Hamas. It's a totally different factor. It's a totally different case. In this case, the immigration judge should have made that distinction clear. The petitioner here was not afraid to go back to Gaza Strip because of some external factor. She was afraid to go back because her expressions, her way of life as a Western woman, were offensive to the Hamas people. In this case, the petitioner's credibility was also discredited by the immigration judge because the judge found inconsistencies in her testimony about her trips to Gaza Strip with her asylum application. Again, those inconsistencies did not go to the heart of the claim. Those inconsistencies did not show that the petitioner was evasive. And she failed to take into account her counsel's reasonable explanations that it was his office that made those errors. And under this Court's jurisprudence, an inconsistency that does not go to the heart of the claim and is explained, the immigration judge has a legal responsibility to take that into account in making a credibility determination. When I read the I.J.'s decision and he talks about credibility, he goes through and he lists several grounds, the inconsistencies that you discussed with Judge Bea, and then he talks about the travels to and from Gaza and back to the United States and whatnot. He specifically makes reference to it in his decision at the administrative record page 92, I believe it is. Your Honor, are you talking about 319 of the immigration judge's decision? Maybe I got the wrong one, but it's the page 92, 93. Your Honor, if you look at that page, the judge first made a decision as to credibility, and then she said that even if the credibility had not been an issue, she would still not grant the case. If you look at it, that goes to the burden of proof. That doesn't go to credibility. It says right here that at the hearing, excuse me, it says, excuse me, Your Honor. Counsel, at page 0320, the immigration judge says, Respondent went on to testify that she remained in the United States until December 1998. However, when the DHS counsel inquired as to why Respondent's declaration stated that she had remained in the United States until 1997, Respondent's counsel immediately proclaimed that this was, quote, perhaps an error by counsel's office, unquote. Then went on to say, this court does not accept counsel's proclamation as an explanation for such an error, since counsel had participated in both the Respondent's amended applications, Exhibit 5 and 6. Yes. So it did take the trip to Gaza, at least that's her dates of when she traveled. Yes. Into consideration on credibility. Yes. Yes, Your Honor, she did that. However, if you look at the main factors in this case that she used to discredit the testimony, were not based on her trips back to Gaza. I mean, the dates, the discrepancies as to the dates should not be a factor here, because the Petitioner testified that, and admitted that she did return to Gaza. She did not say that she did not return to Gaza. Whether she returned in December of 2008 or January of 2000, excuse me, of 1998 or January of 1999 is irrelevant. Discrepancies in dates that do not, that do not show a person's fear of returning to his or her country should not be taken into account in credibility determinations. This Court has repeatedly said that. I think my time is up. Yes, it is. Thank you. Thank you. May it please the Court. My name is Edward Durant. I represent the United States. A contrary result is not compelled to the agency's finding that Petitioner's asylum application contained glaring inconsistencies and, therefore, she wasn't credible. In addition, Petitioner received a fair hearing. She cannot show either error nor prejudice from the immigration judge during the proceedings. And finally, Petitioner did not address the November 2006 decision of the Board in her opening brief. And just as a caveat, thus far Petitioner has had six adverse decisions from the Board of Immigration Appeals. What's properly before this Court is decision one, which dealt with the, which was in April of 2006. And decision three, which was in November of 2006. All the other decisions that Petitioner references in her opening brief and those following were not petitioned. There was no petition for review from those decisions, so the Court should not consider those decisions. Regarding the first issue, Petitioner's credibility, she simply wasn't credible for the following reasons. But the agency gave a lot of reasons. I'm just going to hit upon a few of them. First of all, she disavowed her original asylum application from 1996 at her merits hearing in July of 2004. Now, she acknowledged that she signed this application. In fact, if the Court looks at page 423 and 424, she signed it. She signed it. There was an immigration or an asylum officer who signed it as well. And she acknowledged in that asylum application, I believe at page 727, that nobody helped her. She shucked the box. But then she says that a neighbor helped her translate, this Mahmoud fellow. This is not corroborated, and this doesn't come up to the Court until July 2004, two years after the Court allowed her to file her amended application, and only when she's being cross-examined by government counsel. In addition, Petitioner disavowed all the written statements from the asylum officer's notes. Now, initially she says she doesn't remember the interview. That's at 425. Then she says that her sister's neighbor, this Mahmoud fellow, translated for her. Again, this is uncorroborated. It came to light at the merits hearing in July 2004, well after she had the opportunity to correct anything in the record. In fact, she told the immigration court in July of 2004 that she didn't, in fact, know about this alleged inconsistency around 2002, but yet the Court did not know about it until it was brought out on the cross. In addition, there are significant inconsistencies between her amended application and the testimony about her brother's role in Gazan. I'm just going to address one. Well, Mr. Durant, you're telling me that there's an inconsistency between her application in which she said she was being persecuted because she worked for the Israeli company and was suspected of being a spy, and then when she got to testify, she said it was because Hamas didn't like the fact that she was driving an automobile and perhaps wearing slacks instead of a hijab. Yes, sir. It weren't her. Now, at the very beginning of her cross-examination, she's asked about the signature at the bottom of the 1996 application for asylum, and she says that she had trusted the person. She says, I didn't know it was what I was signing. I had trusted the person who had prepared that for me. So she immediately, on cross-examination, disavowed the contents of that. Why can't we take that into consideration and find that there's no inconsistency? Well, the fact that she disavowed it, Your Honor, is one thing. The court does not have to, nor neither did the immigration judge, did not have to believe what she has to say. It's signed. In fact, as late as 2004, any problems she may have had with this very different asylum claim is not brought before the immigration court, and the judge can take that into consideration. Well, it's brought before the immigration court at the hearing the minute she's cross-examined, isn't it? The minute she's cross-examined, but it's the judge doesn't have to believe that explanation. But the answer has substantial evidence to disbelieve her, right? Correct. And there's there's What's the substantial evidence? The minute she's asked about this declaration, she says that was prepared by a neighbor. It's not correct. I disavow it. Well, she brought it out on cross. It's a convenient excuse. But perhaps I'm Are you saying that on direct examination she said it was correct, and then on cross she said it was incorrect? Is that what you're saying? I'm saying she, during cross, I believe His Honor is referring to a statement she made during cross-examination. That's correct. And disavowing it there, I mean, whether or not she made it during direct or cross, it doesn't come to light until the immigration hearing of 2004. There's circumstances that the immigration judge can consider when determining whether or not he finds her credible or not. He's the one viewing her. He's the one there. And these stories are vastly different. And she can't corroborate it. But circumstances indicate that she was not being credible when she said that's an error, that was prepared by my neighbor, a person I trusted, and it's an error. And the minute she's asked about it. Well, it's timing. It's uncorroborated. It's the fact that it's not mentioned in her amended asylum application. It's the fact that. Are you saying that the period of time between 1996 when she made the application and the immigration hearing, when was that? 2003? The immigration hearing, the merits hearing, was in July of 2004. 2004. Yes. She was in proceedings. So she had it out there for eight years and hadn't amended it. Well, she amended her application in 2002. The Court allowed her to do that. But at no point did she ever seek to correct her former statements, this 900-pound gorilla that's sort of sitting in the room with her. Did she try to? Forget about the gorilla. Tell me what there was in the 2004 application that was inconsistent with what she said in 1996. Well, everything. The 2002 application said that she went back to Gaza and she was being harassed by Hamas for being a liberated woman. It's quite different than her claim. All right. So she gives version one that she's working for an Israeli company and is thought to be a spy. Version two, she goes back to Gaza, drives a car, wears slacks, and that's what's causing Hamas to harass her. Right? Correct. And that's known two years before there's a hearing by the immigration. Why isn't that amendment an effective amendment of the 1996 application? It doesn't come as a surprise to you folks, does it? She's sought to amend it, but she hasn't certainly ‑‑ she never disavowed her first statement. In her second application, she doesn't say the first statement was all wrong, I didn't understand it, it wasn't translated for me, my neighbor made it up. She doesn't mention anything about it. Okay. I got you. And in addition, her new application, her amended application from 2002, is inconsistent with her testimony. And also, for example, in June of 2004, she testified that Hamas was ‑‑ her brother was doing a deal with them so they wouldn't harass her. This is at page 374. She testified again on the same day that her brother made an agreement with Hamas that if she was a little less wild, they wouldn't bug her. That's at page 390. This was also in her amended application. But then she testified at page 434 that that claim was false. So that's a direct contradiction going to the heart of her asylum claim. And that's another reason why ‑‑ That wasn't on the application. That was simply testimony which was on both sides of the issue. Well, she testified twice that Hamas ‑‑ that her brother was cutting a deal with Hamas at 374 and 390. And also in her amended asylum application from 2002, she says that her brother made a deal with Hamas. I believe that's at page ‑‑ And the reason ‑‑ the second reason she said she went back to Gaza was because now she was wearing a hijab. Yes, Your Honor. And her amended application is at 619 to 630. And that's in her declaration. She says that my brother was, you know, doing a deal with Hamas. But then during her cross‑examination in, I believe, July of 2004, page 434, she disavows that statement and says it isn't true. So there we have another material inconsistency going to the heart of the statement. So that's two. What else? Well, as the judge found significant inconsistencies in her dates of travel, it being the fact that she was very afraid of going back to Gaza, she should have been able to get this right. She didn't. But there's a number of inconsistencies. And under this Court's jurisdiction, only one that is material, that is enough to uphold the adverse credibility finding. In addition, Petitioner brought up in her opening brief that she was denied a fair hearing. When the judge made her sign her amended application during cross‑examination, she can neither demonstrate error nor prejudice for the judge's actions. The record will reflect that the judge was quite fair to her, gave her many multiple ‑‑ excuse me, gave her multiple extensions. He continued the proceedings many times. He reopened when she failed to show one time. And certainly no error, no prejudice. And finally, Petitioner waived any challenge to her November 2001 ‑‑ excuse me, November 21, 2006 decision. She didn't address it in her opening brief, even if she had. The Board acted within its discretion when it denied Petitioner's motion to reconsider a motion to reopen from September of 2006. If the Court has no further questions, I'll have a seat. That's fine. Thank you. Thank you. I believe you've extended your time. Thank you all. The case is submitted.
judges: Duffy, Paez, Bea